

Pierre Anthony
Plaintiff, pro se
677 Seventh Avenue Unit 212
San Diego, Ca 92101
662-336-6211
pdanthony_81@yahoo.com

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA
### 333 West Broadway
### San Diego, Ca 92101

**Pierre Anthony,**

    **Plaintiff**

    **v.**

**Greystar Real Estate Partners,**
**Lofts 677 HoldCo LLC,**
**Kimball, Tirey, & St. John LLP**

    **Defendants**

**Case No. TBA**   **'23 CV 0960 LL   BLM**

## I.  RELATED CASES

    a.    **Do you have other Civil Case(s) in this or any other federal court? No**

## II.  STATEMENT OF CLAIM

### COMPLAINT

<u>PRELIMINARY STATEMENT</u>

This civil action is a plea for relief from current and ongoing violations of Americans

with Disabilities Act of 1990 Title III; Health Insurance Portability and Accountability Act of

1996;   Health Insurance Portability and Accountability Security Rule; 18 U.S.C. § 249 Hate

Crimes; 18 U.S.C. § 242 Deprivation of Rights under Color of the Law; 18 U.S.C § 245

1

Federally Protected Activities; 18 U.S.C § 241 Conspiracy Against Rights; and 42 U.S.C. § 3631

Violation; penalties - by his landlord, Lofts 677 Holdco, LLC; their law firm -Kimball, Tirey, &

St. John LLP; and the conglomerate of Greystar Real Estate Investment Partners.   Since

February 22, 2022 till this day Wednesday May 24, 2023, the Plaintiff endures (and has endured)

negative bias due to his disabilities; especially hateful and violent mental, emotional and

psychological abuse; and overt neglect, discrimination, and retaliation in monumental

proportions.

JURISDICTION AND VENUE

    1.   This Court has jurisdiction over alleged violations of Americans with Disabilities Act

of 1990 Title III; Health Insurance Portability and Accountability Act of 1996;   Health

Insurance Portability and Accountability Security Rule; 18 U.S.C. § 249 Hate Crimes; 18 U.S.C.

§ 242 Deprivation of Rights under Color of the Law; 18 U.S.C § 245 Federally Protected

Activities; 18 U.S.C § 241 Conspiracy Against Rights; and 42 U.S.C. § 3631 Violation; penalties

which are all federal laws.

    2.   The unlawful, discriminatory, and retaliatory offenses are still active and ongoing at

677 Seventh Avenue and are, or have been:   perpetrated by managers and assistant managers at

the same address; lawyers, attorneys and legal personnel at Kimball, Tirey, and St. John LLP;

and are institutionally and systematically incorporated by the partners at GreyStar Real Estate.

Plaintiff views all violations, to include those of a criminal nature, to be offenses perpetrated by

those named in the "Defendant" category.   Nonexistent, improper and ineffective corporate

protocols and lack of institutional oversight are the foundational transgressors although named

managers and assistant managers produced the actual infractions.

## PARTIES

3.   The pro se Plaintiff, Pierre Anthony, is an adult individual who has a mailing address of 677 Seventh Avenue Unit 212 San Diego, Ca 92101. His phone number is: 662-336-6211. His email is: pdanthony_81@yahoo.com. Plaintiff has been a resident of this unit at all relevant times and since August 2020.

4.   The Defendant, Greystar Real Estate Partners, is the largest apartment management group in the United States and owns or operates over forty-five apartment complexes in Southern California with 7 or more within a ten-block radius to 677 Seventh Avenue.   It is common knowledge that Greystar employees, managers, and assistant managers maintain professional duties at multiple apartment complexes within the area.   Because the same errant operational philosophies, standard operations procedures, and protocols are likely to be employed by employees, managers, and assistant managers at each location, there is sufficient evidence to suspect systemic breaches of compliance; violations of federal laws and protocols; and further discriminatory and criminal activity at each property that Greystar Real Estate Partners own or operates.

5.   The Defendant, Lofts 677 Holdco, LLC is the suspected holding company for the "7th and G" Apartment Complex where Plaintiff lives.   This entity has been named as it is a contributor of retaliatory actions, emotional and mental violence, and threatening maneuvers toward Plaintiff.   This Defendant currently in the process of evicting Plaintiff from residence via a fraudulent and retaliatory Unlawful Detainer (Case Number 37-2022-00039261-CL-UD-CTL), jurisdiction held by the Superior Court of California.

3

6.   The Defendant, Kimball, Tirey, & St. John LLP is the law firm representing Lofts 677 Holdco, LLC and provides legal guidance to Greystar managers and assistance managers. They have been named as they are complicit in the retaliation, harassment, and even eviction of Plaintiff even though they are a professional law firm and expected to behave or act in a manner that is in accordance with the law.   They have given direct guidance to managers and assistant managers at Lofts 677 Holdco, LLC which has encouraged violations, negligence, and emotional & mental violence on Plaintiff.

STATEMENT OF FACTS

7.   The Plaintiff is a retired United States Marine Corps Master Sergeant having spent 19 years 10 months and 30 days of active service with 14 years tenure in the capacity of an Explosive Ordnance Disposal Technician (June 26, 2000 -April 30, 2020); and prior served the Mississippi State National Guard for 1 year 10 months (October 1998 – May 2000).

8.   The Plaintiff completed four consecutive tours (Ramadi, Iraq 2007; Al Quaim/Ar Rutbah, Iraq 2008; Garmser District, Afghanistan 2009; Sangin District, Afghanistan 2010-2011), in the capacity of an Explosive Ordnance Disposal Technician sustaining first, second-, and third-degree burns; exposure to explosive detonations and blast overpressure; and other significant traumas/injuries due to service.

*Plaintiff's Disability*

9.   As a result, the Department of Veterans Affairs Veterans Benefits Administration Regional Office Rating Decision dated August 18, 2020 established a service-connected rating of 100% permanent and total as directly related to service.

10.   The same document as referenced in paragraph 9, under "Decision" reads:

4

"1.   Service connection for post-traumatic stress disorder; traumatic brain injury (claimed as sleep disorder; TBI/concussion syndrome/loss consciousness x3; PTSD/depression/anxiety; memory loss/lapse;) is granted with an evaluation of 70% percent effective May 1, 2020."

The evaluation percentage is significant because it is a descriptor of veteran's disability

according to the language set forth in Code of Federal Regulations, Title 38 (Pensions, Bonus's,

and Veteran's Relief), Chapter I (Department of Veterans Affairs), Part 4 (Schedule for Rating

Disabilities), Subpart B (Disability Rating), Mental Disorders, §4.130.   The General Rating

Formula For Mental Disorders lists 70% PTSD/TBI as:

Occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); inability to establish and maintain effective relationships.

11.   The combination of these effects coupled with the Plaintiff's decision to only use wholistic therapeutic disability management solutions (no pharmaceuticals) resulted in Plaintiff's retention of an in-home caregiver, Porsche Clark, September 1, 2020.

*Interference with Major Life Activities*

12.   The Department of Veterans Affairs Rating Decision page 5 also reads:

Service connection for post traumatic stress disorder (PTSD); traumatic brain injury (TBI) has been established as directly related to military service. (38 CFR 3.303, 38 CFR 3.304)
The effective date of this grant is May 1, 2020. Service connection has been established from the day after your discharge from active duty.   When a claim of service connection is received with one year of discharge from active duty, the effective date is the day after discharge. (38 CFR 3.400)

Overlap of symptoms between coexisting mental disorders and residuals of TBI is common and sometimes an examiner is unable to distinguish the source of the symptoms.   In these cases, an evaluation is made under whichever set of evaluation criteria allows the best assessment of overall impaired functioning due to behavioral/emotional symptoms of both conditions.   In your case there are overlapping symptoms and the examiner stated that he cannot

5

separate out the symptoms related to TBI versus PTSD and depressive disorder without resorting to mere speculation.   Therefore, these disabilities are evaluated together using the criteria for PTSD which best represents your overall impaired functioning based on all of the identified symptoms.

Please also note that the evidence shows you have peripheral vestibular disorder (claimed as dizziness, giddiness, syncope).   This is noted to be a symptom of your traumatic brain injury and, as such, is considered as part of the subjective facets when evaluating traumatic brain injury.   In your case, peripheral vestibular disorder does not warrant a separate evaluation. (38 CFR 4.124a)

And evaluation of 70 percent is assigned from May 1, 2020

We have assigned a 70 percent evaluation for you post traumatic stress disorder; traumatic brain injury based on:

- Forgetting Names
- Unprovoked irritability with periods of violence
- Suspiciousness
- Depressed Mood
- Disturbances of motivation and mood
- Mild memory loss
- Forgetting recent events
- Chronic sleep impairment
- Inability to establish and maintain effective relationships
- Anxiety
- Occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal)
- Difficulty in establishing and maintaining effective work and social relationships
- Forgetting directions

The overall evidentiary records shows that the severity of your disability most closely approximates the criteria for a 70 percent disability evaluation (38 CFR 4.7, 38 CFR 4.126)

*Plaintiff's Prior Protected Activities*

13.   On July 29, 2020 the Plaintiff, a homeless veteran at the time, signed a housing

agreement with Anjzanice Derr, a housing coordinator for Veteran Community Services (named

6

has since changed to "Adjoin") located at 4025 Camino Del Rio South, Suite 205 San Diego, Ca

for services including housing placement and rental assistance for displaced disabled veterans.

14. Between July 30, 2020 and August 9, 2020, the Plaintiff met with Defendants'

authorized agent and apartment assistant manager Eric Lindsey, on several accounts to discuss

eligibility and tenability for occupancy at 7th and G Apartment complex with Plaintiff ultimately

achieving conditional approval (increased security deposit) for residency.

15. During the July 30, 2020 – August 9, 2020 discussions, the Plaintiff did orally

communicate his homeless status to Eric Lindsey and did receive approval from the same to

allow Veterans Community Services to pay Lofts 677 HoldCo, LLC management directly via

paper check.

16. During the July 30, 2020 – August 9, 2020 discussions, the Plaintiff did orally

communicate his military history and service parameters to Eric Lindsey to illustrate Plaintiff's

unique military background and service.

17. During the July 30, 2020 – August 9, 2020 discussions, the Plaintiff did orally

request -and was granted and received- a two-bedroom unit to accommodate Plaintiff and his

four (4) minor biological children (1-daughter, age 16; twin boys age 10; son age 9).

18. 677 Seventh Ave Unit 212 San Diego, Ca Unit 212 is home for the Plaintiff's

children during court-ordered timing sharing.

19. During the July 30, 2020 – August 9, 2020 discussions, the Plaintiff did orally

request- and was orally granted- a reasonable accommodation for in person verbal

communication, by assistant manager Eric Lindsey, in accordance with Americans with

Disabilities Act of 1990, Title III.

7

20.   The Defendant's authorized agent, Lofts 677 Holdco LLC apartment manager Laura Gonzales and the Plaintiff, electronically signed the lease agreement on August 14, 2020.

21.   August 14, 2020 – February 21, 2022 represents eighteen months of a landlord/tenant relationship, between Plaintiff and Lofts 677 Holdco LLC management which was predicated on in person verbal communication primarily and phone calls or emails as secondary or follow up functions.

**The Plaintiff alleges that the violations listed below are systemic, institutional, and pervasive within Greystar Real Estate Partners southern California portfolio.   The same agents/managers operate multiple apartment complexes within the downtown San Diego area. They often use pedestrian foot traffic for travel to and from and are commonly observed with professional products and instruments in hand.   The compiled information easily illustrates that Greystar management teams operate multiple units in a given area. It is reasonable to expect that same systems, protocols, and procedures are utilized within the overall southern California Greystar Real Estate paradigm.   These actions systemically violate obligations under the Health Care Insurance Portability Act of 1996, California's Confidentiality of Medical Information Act, and the HIPAA Enforcement Rule in 45 Code of Federal Regulations Part 160, Subparts C, D & E.**

*Administrative violations*

22. The Plaintiff alleges that the Defendant did/does not take the appropriate preventive actions to protect confidential information or records against release consistent with the Defendants obligations under the Health Care Insurance Portability and Accountability Act (HIPAA) of 1996 after learning that the Plaintiff was a placement from a veteran's homelessness program.

23.   The Plaintiff alleges that the Defendant does not have developed and implemented security policies and procedures which protect and preserve the integrity of confidential information or records in accordance with applicable laws, rules, and polices.

24.    The Plaintiff alleges that the Defendant does not have a functional, trained security official who is responsible for developing and implementing its security policies and procedures including educating and training the workforce.

25.    The Plaintiff alleges that the Defendant does not perform the required encryption on the appropriate class(s) of records and information.

26.    The Plaintiff alleges that the Defendant does not and cannot protect against the release of the encryption key and passwords for protected classes of information.

27.    The Plaintiff alleges that the Defendant transmits confidential, and other protected classed of information, in an unprotected manner which cannot provide mandatory protections against improper disclosures.

28. The Plaintiff alleges that the Defendant does not reasonably safeguard the confidentiality, integrity, or availability of Electronic Protected Health Information (EPHI) against anticipated threats, hazards, and impermissible uses and disclosures.

29.    The Plaintiff alleges that the Defendant's current EPHI system(s) do not automatically record or preserve any change or deletion of any electronically stored medical information.

30.    The Plaintiff alleges that the Defendant's current EPHI(s) system do not include the identity of the person who accessed and changed information; the date and time the information was accessed; and the change(s) that were made.

31.    The Plaintiff alleges the Defendant utilizes managers interchangeably and therefore these violations are systemic within the Greystar Real Estate Partners management portfolio which includes but are not limited to apartment complexes named:

*525 Olive, 625 Broadway, Alexan Gallerie, Altura, Alt Apart, Ascent at Campus of Life, AU8, Avino, Axion La Jolla, Azul North Park, Broadstone Balboa Park, Broadstone Little Italy, Broadstone Makers Quarter, Casa Ruiz, Casalie, Crelo, City View Apartments, Current, Diega, Dylan Point Loma, Eightteen Ten State, Entrola, Gema, Gravity, Greenfield Village, Han Over Little Italy, Jefferson at Caramel Mountain Ranch, K1, Legacy, Metro Mission Valley, Mode, Navajo Bluffs, Ocean Air, Ocean Breeze, Overlook at Benards, Palisade at Westfield, Park 12-The Collection, Resents Court, Seventh & G, Signature Point, Silo Apartments, Sixth and G, Sola at Pacific Highlands Ranch, Tenth & G, The Landing at Ocean View Hills, The Mission at Rio Vista, The Verge Apartments, Union Grantville ,and Vora Mission Valley.*

**The Plaintiff alleges that the violations listed below are due to poor training and adherence to relevant policies; staffing and talent shortfalls; and a lack of professional empathy and knowledge on how to interact with persons within protected categories.   The Defendant is subject to the United States Department of Housing and Urban Development, The Fair Housing Act, Section 504 24 CFR 8.33; The Americans with Disabilities Act of 1990, Title III Public Accommodations; and the Joint Statement of the Department of Housing and Urban Development and The Department of Justice *Reasonable Accommodations Under The Fair Housing Act.*   It is common knowledge that the Defendant's managers and employee's operate multiple apartment complexes with in the area and reasonable to suspect systemic mismanagement and violations throughout the Defendants apartment complexes listed in paragraph 31.**

*ADA and Reasonable Accommodations Violations*

32.   The Plaintiff lost employment from R-3 Strategic Support Group 1050 B. Avenue Suite A Coronado, Ca 92118 on August 14, 2021 due to lack of security clearance adjudication.

33. On August 22, 2021 the Plaintiff applied for the City of San Diego COVID-19 Housing Assistance Stability Assistance Program (HASP).

34.   On October 14, 2021 the Plaintiff received a notice of payment electronic correspondence from the City of San Diego COVID-19 citing payment of rent and/or utilities to address listed:   677 7th Ave Unit 212 San Diego, Ca 92101.

35.   The Plaintiff alleges the October 14, 2021 payment from City of San Diego COVID-19 HASP was received by manager Laura Gonzales on October 19, 2021.

36.   The Plaintiff alleges payment referenced in paragraph 34 did create an economic relationship between the Plaintiff and the City of San Diego COVID-19 HASP.

37.   On December 17, 2021 the Plaintiff submitted another City of San Diego COVID-19 HASP application to cover future rents.

38.   On February 22, 2022 at 1954 PST, manager Laura Gonzales submitted a City of San Diego COVID-19 HASP application on behalf of the Plaintiff without notice or disclosure to the Plaintiff.

39.   The Plaintiff alleges that the application submission referenced in paragraph 38 did not contain the Plaintiff's correct name.

40.   The Plaintiff alleges that the application submission referenced in paragraph 38 did not contain the Plaintiff's correct email address.

41.   The Plaintiff alleges that the application submission referenced in paragraph 38 did not contain the Plaintiff's correct phone number.

42.   The Plaintiff alleges that the application submission referenced in paragraph 38 did not mention or contain information regarding the Plaintiff children.

43.   The Plaintiff alleges that the application submission referenced in paragraph 38, coupled with the alleged infractions in paragraphs 39, 40, 41, & 42 aggregated to form an erroneous City of San Diego COVID-19 HASP application on behalf of the Plaintiff.

44.   The City of San Diego COVID-19 HASP did allow for landlords to submit applications on behalf of their tenants.

45.   The City of San Diego COVID-19 HASP did require tenants to review and accept or approve the application before the it's submission.

46. The Plaintiff did not review, accept, or approve the City of San Diego COVID-19 HASP application and was not notified prior to the Defendant's application submission.

47. The Plaintiff alleges that the unsanctioned submission of the application referenced in paragraph 38 did interfere and ultimately halted the processing (the system could not reconcile the two applications) of the application referenced in paragraph 37.

48. The Plaintiff alleges that the unsanctioned submission of the application referenced in paragraph 38 did interfere and ultimately halted the natural process of the application referenced in paragraph 37 and the application reference in paragraph 38.

49. The Plaintiff alleges that the unsanctioned application submission referenced in paragraph 38 did interrupt a preexisting economic relationship between the Plaintiff and the City of San Diego COVID-19 HASP.

50. The Plaintiff alleges that the unsanctioned application submission referenced in paragraph 38 was professionally negligent.

51. The Plaintiff alleges that the Defendant is vicariously responsible for the Plaintiff's housing due to the Plaintiff's reliance on the Defendant's assistance for successful completions of monthly rents.

52. The Plaintiff alleges that he has never personally paid any rents to the Defendant and all rents have been submitted third party.

53. The Plaintiff alleges that the protocols -when functioning according to the Plaintiff's reasonable accommodation- requires the Defendant to engage interpersonal to confirm receipt, when the Defendant receives rents on behalf the Plaintiff directly from third parties.

54.   On Monday, March 21, 2022 at 0846 PST, the Plaintiff received an "Application Submitted Successfully" notification from the City of San Diego COVID-19 via electronic correspondence.

55.   On Thursday, March 24, 2022 at 0738 PST, the Plaintiff received an "Application Processing Update" notification from the City of San Diego COVID-19 via electronic correspondence.

56.   On Thursday, April 14, 2022 at 1449 PST, the Plaintiff received a "Rental Assistance Ineligible" notification from the City of San Diego COVID-19.   The reason was listed as "Failure to return required forms and documents to determine eligibility."

57.   This was one of the first signs to the Plaintiff that there was an issue so his caregiver was made aware of the problem.   The notification referenced in paragraph 56 surprised both the Plaintiff and his caregiver because The City of San Diego COVID-19 HASP required additional documents (lease, light bill, cell phone bill, etc.) which the Plaintiff and caregiver previously submitted via electronic correspondence sometime in March.

58.   The Plaintiff made the Defendants manager Elena Shattuck aware of the problem the between April 14, 2022 and April 21, 2022.

59.   The Defendants managers, Elena Shattuck, took no interest in the subject and responded as if she had no knowledge of the application, it's submission, or it's status.

**The Plaintiff alleges that this is the juncture where the relationship between parties began to dissolve.   Both prior named managers were familiar with the Plaintiff, his protected status, and both previously adhered to his reasonable accommodation.   Overall, the Plaintiff feels that the new managements unfamiliarity with the protocols of ADA; surmounting exorbitant amount of rents; and a mishandling of professional frustration were the catalysts for the deterioration of the relationship between the Plaintiff and the Defendant.**

*ADA/Reasonable Accommodation Violation with Severe Emotional Distress Due to the Nature of Damage Inflicted Upon the Plaintiff who is Uniquely Sensitive to Traumatic Stress*

60.   The Plaintiff alleges that the Defendant's manager did not ensure that the request for the Plaintiff's reason accommodation were processed with consistent legal requirements.

61.   The Plaintiff alleges that the Defendant's manager did not engage in interactive process with the Plaintiff about different options to remedy to problems.

62.   By Tuesday April 19, 2022 the Plaintiff's rents had accumulated to $14,787.24.

63.   The Plaintiff alleges the amount of rents stated in paragraph 62 coupled with the Defendant's managers' unwillingness to assist with a resolution was abhorrently negligent and, given Plaintiff's sensitivity to traumatic stress, subjected the Plaintiff to the highest order of emotional and psychological traumas.

64.   The Plaintiff alleges the traumatic stress imposed by the Defendant is especially extreme, cumulative and still exists to the day.

65.   As of Wednesday May 24, 2023, the Plaintiff's rent has accumulated to an amount due of $42,720.75.

66.   The Plaintiff alleges that every day since Thursday April 14, 2022, after the Plaintiff became mentally aware of the status of his rents and situation withstanding, has been a struggle to stave off severe anxiety, deep depression, and overwhelming hopelessness.

67.   The Plaintiff's in-home caregiver can affirm that Plaintiff's daily mental and psychological orientation has been despondent due to the Defendant's actions.

68.   The Plaintiff's VA medical records can affirm that he and the caregiver, requested and received, additional medical services and support to combat the injurious nature of the additional traumatic stress.

14

69.   The Plaintiff's VA medical records can confirm that he and the caregiver were provided routine medical care from Dr. Toya Pan-Weisz, an outside the network provider for the VA, as a result of the mental abuse provided by the Defendant.

70.   The Plaintiff affirms that potential for possible eviction in tandem with the Defendant's disparaging marginalization requires the fullness of the Plaintiff's already limited daily mental capacity in order to try to rectify the problem.

71.   The Plaintiff alleges that the Defendant's introduction of these circumstances and the constant threat to a base necessity such as shelter, coupled with the Plaintiff's overall limitations, effectively neutralized his ability to address other ongoing extenuating circumstances within his own life.

72.   The Plaintiff alleges that the Defendant's actions created ongoing conditions that are harmful and injurious which continuously erode the Plaintiff's already limited overall resources.

73.   The Plaintiff affirms that his three biological son's Clifton, Caiden, and Collin have been parentally kidnapped by their mother since July 22, 2021 and he has not heard from them and does not know where they are in contempt of a valid court order and parenting plan issued by a magistrate from the Sixth Judicial Circuit Court in Pinellas County, Fl.

74.   The Plaintiff alleges that the Defendant's negligent actions are continually detrimental to the recovery of his sons and reestablishment of his family.

75.   The Plaintiff affirms that his mental, emotional, psychological, physical, and financial domains are wholly preoccupied and consumed by the pursuit of maintaining safe and adequate housing. This situation produced by the Defendant leaves little to no resources in the aforementioned domains to address or correct significant problems in other categories of life.

76. The Plaintiff affirms that he did not complete any college assignments while a student at National University, and during the span of the offense, as a result of his inability to cope with the monumental trauma and stress.

77. The Plaintiff affirms that he was eventually dropped from school and does not have the ability to attend other college due to a below average Grade Point Average.

**The Plaintiff alleges that this juncture represents the beginning of a reign of retaliation, discrimination, and persecution that has yet to cease while also accruing substantial daily negative significance.   The combination of the level of emotional violence subjected; the willingness of the Defendants housing manager and legal counsel to conspire; and the bias motivation of a preexisting negative attitude toward the Defendant's disabilities easily aggregate to constitute on going violations of:   18 U.S.C. § 245 Federally Protected Activities, 18 U.S.C § 249 § Hate Crime Acts, 18 U.S.C. § 241 Conspiracy Against Rights, 18 U.S.C. § 242 Deprivation of Rights Under Color of Law, 42 U.S.C § 3631 Violations; penalties, and The Matthew Shepard & James Byrd Jr. Hate Crimes Prevention Act.   The Plaintiff affirms that the Defendants actions are crystallized in history having forever and irreparably harmed and injured the outcome of life for the Plaintiff and his family.**

78. On Thursday April 21, 2022, and in response to the notification listed in paragraph 56, the Plaintiff was forced to contact the City of San Diego Housing Commission and initiate an escalation (about the event which transpired in paragraph 38).

79. The Plaintiff alleges that during this time the Defendant's manager became noticeable withdrawn and her voluntary communication began to dwindle, limiting the Plaintiff's access to utilize his reasonable accommodation.

80. On Friday May 6, 2022 the Plaintiff received a missed called and corresponding email from the Defendant's manager, Elana Shattuck.   In the voicemail, the Defendant's manager relayed information informing the Plaintiff that he was overdue on rent and that corresponding legal action would transpire.

81.   The Plaintiff affirms that due to the Defendants actions listed in paragraph 80 - in
that moment, he felt the intense onset of desperation, depression, and anxiety which has yet to
subside.

82.   On Friday May 8, 2022 at 1748 PST, the Plaintiff tried to plea to the Defendant's
manager for compliance to ADA, a bit of professional empathy, and an overall slower pace.
The electronic correspondence sent to The Defendant stated:

Good afternoon,

I hope this email finds you all in good spirits and having enjoyed this beautiful San
Diego weekend.  This correspondence is designed to take an opportunity to seek clarity
and written response with regards to an audio message delivered on Friday May 6, 2022
at 1059 PDT by Elena Shattuck, Manager for 7th and G apartment/condo complex.  As
for my tone of this message, I always find my experience with 7th and G
managers/personnel courteous, professional, and attentive.  However, given the nature of
audio received, I feel it appropriate and reasonable to respond in a manner which best
protects my housing interests.  It is my hope for us to reach resolution which mutually
benefits all parties.

Here are two major points delivered on the message from May 6 which are areas of
contention.  I will speak about the area of concern, why it's concerning, and a reasonable
way forward.

1.   My first concern is the idea that I have not provided updates to 7th and G.  On 14
March I spoke with Elena and gave a full synopsis of the intricacies of my personal/this
particular situation.  To start, I notified Elena that on Jan 26, 2021 Manager Laura
Gonzales submitted an application on behalf of Pierre Anthony (#HSAP341842) to the
City of San Diego via the Housing Stability Assistance Program website.  While this
effort was in good nature, its submission was in direct conflict with an application
(#HSAP 235845) which was initially submitted on December 17, 2021 by myself, Pierre
Anthony.  During our discourse, I clearly outlined the difficulties likely to be
encountered which include a longer response time for payment by City of San Diego
Housing Stability Assistance Program.  Elena acknowledged the situation and on a few
occurrence's since, there have been verbal exchanges between myself and 7th & G
representatives.....so it's confusing to hear that there have not been any updates.  In
reality, the communication history between myself 7th & G is quite pronounced, as it
should be, given my status as a Disabled Veteran and protracted usage of government
programs.  In response to this accusation, I can only assume that 7th and G Management
is experiencing surmounting pressure due to the amount of rent due.  While this is
understandable, I would caution for patience during these fragile and tumultuous times as

17

most persons and businesses are suffering with some type of hardship.  Rent will be paid
in due time, as my application is still actively processing through the City of San Diego's
sequence and will be issued once fully processed.

2.  My second concern is the casual mentioning of advancing this issue to 7th and G's
Attorney's for processing.  This maneuver delivers red flags from multiple
directions.  Not only does it promote the idea that 7th and G
Management/Representatives accept no responsibility for the delay of paid rent by the
erroneous application submission by a 7th and G Manager - which after some research
was verified by City of San Diego personnel as the activity which exacerbated this
process.  Legally, this seems to be in direct conflict with Assembly Bill 2197 which
extends COVID-19 protects to personnel who've submitted for emergency rental
assistance by March 31, 2022 (until June 30, 2022).  Without getting into all of the
legal/technical vernacular I could use to support my argument, allow me to simply say
that activity such as this from housing management to resident truly degrades
business/customer relations.  While my typical experience with 7th and G has been
overwhelmingly positive, this one position has managed to strongly degrade my trust and
confidence in this institution.  Threatening misaligned legal action for a situation which
actually warrants a much more compassionate approach seems like the correct
environment to foster harassment.  If I were 7th and G, I'd truly reconsider my approach
prior to further engagement.

   The lack of empathy expressed is an oversight from a professional and legal
perspective.  Even if this was just an administrative process, it's professionally
thoughtless and legally negligent.  The spirit of this engagement should have been
addressed in a much more "professionally friendly" manner.  Missed opportunity for 7th
and G.  Regardless, since possible legal action looms, please forward this
correspondence with any other so the lawyers can understand the residents' position on
the manner.  Also, please provide all response in a written format for applicable
reasons.

Pierre Anthony
Master Sergeant USMC Ret.
Master Bomb Technician

83.  The Plaintiff alleges that after he sent the email referenced in paragraph 82, the

relationship between the Plaintiff and the Defendant's manager entered a space of definite and

continuous adversity.

84.  The Plaintiff alleges that this surmounting stress continually eroded the relationship

between him and his caregiver as tensions mounted and resources became more limited.  The

Plaintiff's caregiver was new, has limited experience, and was increasingly overwhelmed by her dwindling options and increasing irritable patient.

85.   The alleges that the narrative captured in paragraph 84 is a secondary effect of the Defendants negligence and action captured in paragraph 38.

86.   On Thursday May 26, 2022 at 0748 PST the Plaintiff received a notification from the City of San Diego COVID-19 HASP via electronic communication which deemed the Plaintiff ineligible for assistance due to the Defendant's unwillingness to cooperate in correction of the issue stated in paragraph 38 which resulted in the assistance request submission to fall outside of terms of eligibility.

87.   On Tuesday May 31, 2022 at 1106 PST, the Plaintiff received electronic correspondence from the Defendant's manager, Elena Shattuck, containing a forwarded message from the City of San Diego COVID-19 HSAP dated from the same day and received two minutes earlier.   The Defendant's managers message read:

Hello, I received this on your behalf.   Please give them a call. Elena Shattuck

88.   The forwarded electronic correspondence, which originally received by the Defendant's manager on Tuesday, May 31, 2022 at 1104 PST, read:

**From:** City of San Diego COVID-19 Housing Stability Assistance Program
<noreply@sdhc.net>
**Sent:** Tuesday, May 31, 2022 11:04 AM
**To:** 7th and G Manager <7andGmgr@greystar.com>
**Subject:** [EXTERNAL] City of San Diego COVID-19 Housing Stability Assistance
Program

From: City of San Diego COVID-19 Housing Stability Assistance Program
Subject: Call Back Required for Appeal Review – City of San Diego COVID-19 Housing
Stability Assistance Program
Re: Pierre Anthony

The San Diego Housing Commission (SDHC) has made two attempts to contact you via telephone at
(619) 925-5688 to review the items you raised in your appeal of the initial determination of ineligibility for your application for the City of San Diego COVID-19 Housing Stability Assistance Program.

To complete another review of your file as requested, please call Gini Nutz at 619-231-9400 x 6113 to discuss your application. If you do not respond within 3 business days, your application will receive a final determination of ineligibility because you did not provide sufficient additional information to support changing the initial determination that your application is eligible.

This project is being supported, in whole or in part, by federal award numbers ERA0302, ERAE0043, and ERAE0321, awarded to the City of San Diego by the U.S. Department of the Treasury.

Do not reply to this email, which has been automatically generated.

Sincerely,
City of San Diego COVID-19 Housing Stability Assistance Program

This project is being supported, in whole or in part, by federal award numbers ERA0302, ERAE0043 and ERAE0321, awarded to the City of San Diego by the U.S. Department of the Treasury.

89.   The Plaintiff alleges that the email was addressed to the Defendant's manager which established a requirement for the Defendants manager to engage in and render due process.

90.   The Plaintiff alleges that the electronic correspondence described in paragraph 82 triggered the Defendant's manager and was the plausible escalation of the intent and behaviors identified in paragraphs 79 and 80.

91.   The Plaintiff alleges that the electronic correspondence reference in paragraph 82 caused the Defendant's managers to begin a violent emotional, psychological, and discriminatory attack which still persists as of Wednesday May 24, 2023.

92.   On Tuesday May 31, 2023 at 1104 PST, the Plaintiff received forwarded electronic correspondence from the Defendant's manager with a message that read:

20

Hello, I received this on your behalf.   Please give them a call.   Thank You, Elena Shattuck.

The forwarded electronic correspondence was the information listed in paragraph 88.

93.   The Plaintiff alleges that the Defendant's manager actions and intent from the electronic correspondence described in paragraph 92 was behavior designed to undermine the Plaintiff's self-worth, confidence and well-being.

94.   The Plaintiff affirms that he felt gaslit and belittled due to electronic correspondence listed in paragraph 92, which induced a panic attack as the mental and psychological traumas mounted and the options for relief were intentionally thwarted or withheld.

95.   The Plaintiff affirms that the Defendant's managers' actions, recorded in paragraph 92, required the Plaintiff to bear the responsibility and perform all functions required to satisfy the obligations required to correct the actions listed in paragraph 38.

96.   On Thursday June 16, 2022 at 1135 PST, the Plaintiff received forwarded electronic correspondence from the Defendant's manager which stated:

Hello.   Just as an FYI we received the following email from SDHC.   Elena Shattuck/Sr. Community Manager

97.   On Thursday June 16, 2022 at 1120 PST, the Defendant's manager received the following electronic correspondence from the City of San Diego COVID-19 HSAP:

**From:** City of San Diego COVID-19 Housing Stability Assistance Program <noreply@sdhc.net>
**Sent:** Thursday, June 16, 2022 11:20 AM
**To:** 7th and G Manager <7andGmgr@greystar.com>
**Subject:** [EXTERNAL] City of San Diego COVID-19 Housing Stability Assistance Program

Subject: Rent Assistance Application– City of San Diego COVID-19 Housing Stability Assistance Program
Dear [Landlord of Pierre Anthony],
Your application for the City of San Diego COVID-19 Housing Stability Assistance Program has been reviewed. The following months are ineligible for rental assistance for the following reason(s):

21

[April, May, June 2022]
[Assistance requested not within eligible time period]
For questions, or to submit an appeal of this determination, please contact the hotline at
(619) 535-6921. If you wish to submit an appeal, you must do so within 30 calendar days
of this notice.
For community-based resources, landlord-tenant resolution services, fair housing
information or other housing resources, please contact (619) 535-6921.
State law includes eviction protections for renters, which have been extended through
June 30, 2022. An application submitted on or before March 31, 2022, provides
protections against upcoming evictions due to non-payment of rent. For additional
information please visit https://www.sdhc.org/evictionban/.
This project is being supported, in whole or in part, by federal award numbers ERA0302,
ERAE0043, and ERAE0321, awarded to the City of San Diego by the U.S. Department
of the Treasury.

Do not reply to this email, which has been automatically generated.
Sincerely,
City of San Diego COVID-19 Housing Stability Assistance Program
**This project is being supported, in whole or in part, by federal award numbers
ERA0302, ERAE0043 and ERAE0321, awarded to the City of San Diego by the
U.S. Department of the Treasury.**

98.  On Thursday June 16, 2022 between 1120 PST and 1155 PST, after receiving the

correspondence stated in paragraphs 96 and 97, the Plaintiff went to the Defendant's managers

office to discuss the forwarded electronic correspondence.

99.  The Plaintiff was extremely distressed and nervous about the conversation stated in

paragraph 98 because of the impending implications associated with the inability to pay for the

months deemed ineligible in paragraph 97.

100.  The Plaintiff experienced an ongoing state of extreme mental and psychological

anguish in anticipation of the conversation stated in paragraph 98 because of the previous

intimidating and marginalizing disposition of the Defendant's manager.

101.   The Plaintiff alleges that he felt inferior as a tenant understanding that the Defendant's manager wielded the necessary power and authority to help or harm his situation and recent interactions ended on the side of harm with increasing regularity.

102.   The Plaintiff alleges that on Thursday June 16, 2022 between 1120 PST and 1155 PST, after entrance into the company office, the Defendant's manager refused to speak to him.

103.   The Plaintiff allege that the Defendant's managers actions, referred to in paragraph 102, were:

104.   In violation of federal laws, policies, and guidelines which govern landlord – tenant protocols and relations;

105.   In violation of federal laws, policies and protections which govern people of protected classes;

106.   A form of abuse that is intended to harm someone emotionally or physically, rather than physically.

107.   Caused serious and long-lasting effects on the Plaintiffs mental and emotional health and led to deepening the issues of the Plaintiff's depression, anxiety, and post-traumatic stress disorder.

108.   Predicated on the Plaintiff's perceived vulnerability because he is disabled, isolated and had preestablished reliance on the Defendant's mangers.

109.   An intentional use of force or aggression that resulted in long lasting harm, injury, and damage.

110.   The Plaintiff alleges that the Defendant's assistant manager, Eric Lindsey, was sitting adjacent to the manager and observed the entire incident.

111.   The Plaintiff alleges that he asked the Defendant's manager if he could instead speak with the assistant manager and he was verbally denied.

112.   The Plaintiff alleges that the denial stated in paragraph 111 was outright bullying and a dominant display of power.

113.   The Plaintiff alleges that the power displayed as stated in paragraph 111 was especially severe and psychologically dominating to the extent of instantly decimating years of progress achieved in combating service-connected post-traumatic stress disorder.

114.   The Plaintiff alleges that after the event in paragraph 111 transpired, he had no choice but to remove his pride, break his posture and ask again because the Defendant's manager was the central authority figure who could positively impact his rapidly deteriorating housing crisis.

117.   The Plaintiff alleges that the Defendant's manager did observe, and take pleasure in observing, the Plaintiff's broken demeanor and as a result she smiled, crossed her arms, and engaged in conversation with the Plaintiff.

118.   The Plaintiff alleges that the conversation that transpired after the situation listed in paragraph 111 was not substantial and had no positive results.

119.   The Plaintiff affirms that he felt isolated, defeated, and a surreal sense of hopelessness after inventory of the events which transpired in paragraphs 102 and 111.

120.   The Plaintiff alleges that the Defendant's manager and law firm -Kimball, Tirey, & St. John LLP- was complicit in the actions stated in paragraph 102 and 111;

121.   And conspired with the Defendant's manager to harass, intimidate, and psychologically damage the Plaintiff.

122.   The Plaintiff alleges that the Defendant's law firm are law professionals and have a reasonable expectation to know understand the laws pertaining to ADA and tenant rights.

123.   The Plaintiff alleges that the Defendant's law firm assisted with developing the strategy for victimization and actively participated in the strategies' employment.

124.   The Plaintiff affirms that the collective efforts of the Defendant's manager and law firm, as outlined in paragraphs 102 and 111, were effective and prevented him from receiving the sought after help while simultaneously delivering destructive and injurious actions.

**The Plaintiff alleges that the overall effect, range, and impending negative consequences associated with the Defendant's actions required advocacy beyond what could be provided by his caregiver or himself.   The Plaintiff's decision to contact the California Department of Fair Employment and Housing was burdensome due to his lack of requisite emotional and psychological capacity.   At the time of, and through the timeframe of these incidents, the Plaintiff was primarily focused on the recovery of his three sons who were -and still are- parentally kidnapped by their mother.   The Defendant's continuous barrage of offense has painfully prolonged the reunion of a father to his sons and that damage is not negatable.   The Plaintiff did not have the mental, emotional, or psychological resources to fight for both housing and his children.   And so, the Plaintiff defaulted to the pursuit of housing because -without shelter- he would not have the required safe domain to exercise his parental rights.**

125.   The Plaintiff alleges that the incident as outlined in paragraphs in 102 and 111 were the last time he and The Defendants manager engaged any in person exchange sans basic greetings when contact was unavoidable (hallways or elevator).   Future dialogue was mostly written.

126.   The Plaintiff alleges that he felt constant oppression after the events outlined in paragraph 102 and 111.

127. The Plaintiff affirms that he lives on the second floor of his apartment complex and that the Defendant's manager lives on the same floor and hall which makes intermittent contact unavoidable.

128.   The Plaintiff alleges that the Defendant's manager's previous production of authority and power displayed with such violent negative force, coupled with her living proximity, made it nearly impossible to be comfortable at home at any time after the named incidents.

129.   The Plaintiff alleges that the Defendant's manager's living proximity had drastic negative effects on his daily disposition and continuously influences if/when he can depart his own dwelling.

130.   The Plaintiff alleges that he cannot stand visual intake of the Defendant's manager without immediate feelings of belittlement, neglect, and humiliation,

131.   The Plaintiff alleges that the mental construct define in paragraph 130 is to the persistent detriment of his preexisting mental disabilities and regularly reduces his decision to leave his apartment unit.

132.   The Plaintiff alleges that the conditions list in paragraphs 130 and 131 amounts to a resting restrictive state of a jail cell which melds accurately with the Defendant's manager's corresponding role, demeanor, and behavior of a correctional officer.

133.   The Plaintiff alleges that Defendant's lawyers are equally liable for all offenses and did collude -with instruction, guidance, and representation-with the Defendant's manager to produce exhaustively inclusive circumstances to systematically abuse and denigrate the Plaintiff personally, as well as, egregiously violate a remarkable percentage of his overall protected rights.

      **The Plaintiff affirms that his request for a reasonable accommodation for verbal communication is proportional to his standing necessity to avoid functions which induce stress, anxiety, and depression as outlined in paragraphs 9 – 12. The instruments utilized to support any administrative remedies, to include this complain, are both written and require research – a constant vexation for the Plaintiff when engaged.   Furthermore, the materials of topic are adverse by nature which creates sustained mental toxicity, and the corresponding psychological denigrating after effects.   Mental disabilities are historically difficult for healthier minded individuals to accurately catalogue, but the Plaintiff affirms that the mind controls all of the bodies other systems and is capable of wreaking turmoil of extents untold.   The Plaintiff requests particular emphasis be placed on the creation and production of written administrative remedies because -by their very nature- they represent an unavoidable movement into domains which are fundamentally and wholistically detrimental to the Plaintiff, his mental health, and his overall quality life.**

134.   The Plaintiff alleges that the events denoted in paragraphs 102 and 111 were the final catalysts to the Initial Demand Letter served to the Defendants lawyers [Kimball, Tiney, and St. John, LLP.] on Monday June 20, 2022 between 1500-1700 PST at 7676 Hazard Center Drive Ste. 900 San Diego, Ca 92108.

135.   The Plaintiff affirms that his caregiver and himself executed the required service on the date, time, and location listed in paragraph 134.

136.   The Plaintiff alleges the time during creation, production, and service of the document listed in paragraph 134 -due the coverage of areas of impact and calamity inherently associated with those tasks- was rife with particular detriment proportional to the outcomes tethered to the document's targeted effectiveness.

137.   On Tuesday July 5, 2022 the Plaintiff submitted work request number 1866526 after inadvertent breakage of glass window pane in master bedroom.

138.   On Tuesday July 5, 2022 the Plaintiff submitted work request number 1866332 to request professional carpet cleaning to address hazards created by event catalogued in paragraph 137.

139.   On Tuesday July 5, 2022 the Plaintiff submitted work request number 1866317 to request service on his refrigerator which would not maintain a cold enough temperature to protect food.

140.   The Plaintiff affirms that he felt especially vulnerable and subjugated to the power and authority of the Defendant's ability to grant or withhold valid services due to ongoing conflict and previous systemic harmful behavior.

141.   The Plaintiff alleges that any work request submission that he originated after Tuesday May 17, 2022 was the site of a harmful and injurious event.

142.   The Plaintiff affirms that the Defendant's maintenance person addressed work request number 186317 on Wednesday July 26, 2022 with only intermittent results.

143.   The Plaintiff affirms that the Defendant's maintenance person did relay a lead time for project closure of work request number 1866526.

144.   The Plaintiff alleges that the Defendant marked work request number 1866332 complete without actually completing assigned task.

145.   The Plaintiff alleges that the Defendant's dishonest actions outlined in paragraph 144 resulted in minor physical harm with glass shards lacerating and puncturing the Plaintiff's left and right feet.

146.   The Plaintiff alleges that the actions requested in paragraph 144 are valid and available for selection on the Defendant's 7th and G Apartments company website.

147.   The Plaintiff alleges that the Defendant's denial to fulfil actions requested in paragraph 144 represent retaliatory and discriminatory behavior.

148.   On Wednesday July 6, 2022 at 1957 PST, the Plaintiff received confirmation of electronic receipt for submission to the California Department of Fair Employment and Housing

28

Intake Form (DFEH-IF-903-4X-EXG) Case Number 202207-17512407 – a last ditch effort for advocacy, assistance, and defense against routine ADA violations, profession neglect, and reoccurring psychological abuse.

149.   On Friday July 8, 2022 the Defendant's manager posted written correspondence on the Plaintiff's door – a response to the Plaintiff's initial demand letter referenced in paragraph 134 – which read:

> Dear Mr. Anthony:
>
> We have reviewed your settlement offer with our attorneys.
>
> We respectfully disagree with your contentions and deny any wrongdoing.   We never received any disability accommodation request from you to help you with your HASP application form.   We can make, and do make, inquiries on the status of these types of applications and there is no connection to any step that may normally be taken in that regard with your contention that we did no assist you or that our actions caused you any harm.   You lack of eligibility was not caused by our actions but is based on the factors the City used to determine program eligibility; none of which are within our control.
>
> If with you letter you are now requesting a disability accommodation, please advise, and we will evaluate it consistent with federal and state law.
>
> In light of the above, we respectfully decline your settlement offer.
>
> That said, if there is anything that we can reasonably do to assist you in coming into compliance with your rental agreement, please let us know.
>
> Very truly yours,
>
> [Wet signature in light blue ink] Elena Shattuck

150.   The Plaintiff alleges that the letter referenced in paragraph 149 is authored by the Defendant's manager is an open admission of intent;

151.   Records explicit support from the Defendant's lawyers;

152.   Provides a neat characterization of toxic behaviors perpetrated by the Defendant;

153.   Crystallizes overtly damaging lies and gaslighting behaviors;

154.    Demonstrates congruent efforts between the Defendant's manager and lawyer's to unethically and illegally violate and abuse the Plaintiff;

155.    Exposes willfully negligent and criminal disregard for federal and state laws, policies, and procedures;

156.    Highlights passive aggressive and trolling behaviors towards the Plaintiff;

157.    Seeks to control and manipulate the Plaintiffs thoughts, feeling, and actions;

158.    And reveals a disgustingly savage attack on a non-threatening and unassuming disabled veteran.

159.    On Wednesday August 10, 2022 the Plaintiff submitted work request number 1897520 with a general reminder about the uncompleted maintenance of work request number 1866332.

160.    On Thursday August 11, 2022 the Defendant marked work request number 1897520 complete without actual fulfilment; hazards remained embedded on site.

161.    On Thursday August 11, 2022 at 1554 PST, the Plaintiff received electronic correspondence from Annabel Navarette, Assistant ADA Coordinator, California Department of Fair Employment and Housing.

162.    The electronic correspondence stated in paragraph 161 was a response to Plaintiff's request to the California Department of Fair Employment and Housing for a reasonable accommodation in preparation for intake interview.

163.    The California Department of Fair Employment and Housing did grant the Plaintiff's ADA reasonable accommodation request for questions in advance and an in-person interview with a scheduled date of Tuesday September 13, 2022 0900-1000 PST.

164.  On Tuesday August 16, 2022 the Plaintiff submitted work request number 1901945 to the Defendant with a request for a new refrigerator as the final solution for ongoing issues first highlighted in work request 1866317.

165.  On Tuesday August 16, 2022 the Plaintiff submitted work request number 1901945 to the Defendant in order to receive $200, via cash or voucher, to replace food spoilages associated with his improperly functioning refrigerator.

166.  In regard to the work requests named in paragraphs 164 and 165, The Plaintiff did include notes revealing that he was disabled;

167.  On a structured income;

168.  In need of immediate reimbursement in order to meet daily subsistence needs;

169.  And could provide photographic evidence of the food spoilage if necessary.

170.  The Defendant delivered a replacement refrigerator to the Plaintiff on Wednesday August 17, 2022;

171.  Closed the work request;

172.  And failed to mention or address the $200 voucher or reimbursement for food.

173.  The Plaintiff alleges that the Defendant's manager did descend to the lowest rung of Dante's Inferno and outright denied him one of life's primary needs – food.

174.  The Plaintiff alleges that the Defendant's actions stated in paragraph 173 were viciously dehumanizing;

175.  Forced the Plaintiff to survive with limited access to sustenance;

176.  And depleted the Plaintiff's self-esteem, self-worth, and physical countenance with ghastly effect.

31

177.   The Plaintiff alleges that the Defendant employed a system of gradual increase of psychological burdens with consistent reduction of access to basic necessities to isolate, torment, and torture him.

178.   The Plaintiff alleges that the Defendant's system, as outlined in paragraph 177, was emphatically brutal and delivered with devastating effect.

179.   On Friday August 19, 2022 at 1448 PST, the Plaintiff received electronic correspondence from the Defendant's manager which stated:

> Good Afternoon,
>
> I apologize for the delay; we have been waiting to hear back from our attorneys on how to proceed. We are currently waiting or our corporate office to unlock your account so that we may put the check that was received in the amount of $9,077.47 towards your current balance of $23,411.91. Your calculations are almost correct, the check was for more than you had listed, your new balance due is $14,334.44.
>
> Please let us know if you have any other questions.
>
> Thank you,
>
> Elena Shattuck

180.   The Plaintiff alleges that the Defendant's electronic correspondence listed in paragraph 179 is devoid of any professionalism, empathy, or even proper information;

181.   Instantly created a scenario of mental dread and doom due to the number of rents owed;

182.   Explicitly outlines the Defendant's failure to engage in interactive process;

183.   Accurately records the Defendant's violations and non-compliance with the federal mandates of ADA;

184.   Displays reckless disregard for the Plaintiff's repeated requests for the employment of his verbal communication reasonable accommodation;

185.   Does not effectively delineate the Plaintiff's financial obligations for rents;

186.   Crystallizes the fact that the Defendant did not assist with remedying the Plaintiff's delinquent rents;

187.   And provides a visual landscape as to how the Plaintiff rents have amassed to over $42K – which, in itself, is a flagrant signal of a massive mismanagement and professional negligence.

188.   Due to the Plaintiff's disability and the Defendant's continued insalubrious employment of the written form of communication, the Plaintiff was not able to respond to the electronic correspondence until Wednesday August 31, 2022 at 0854 PST.

189.   On the date, time, group stated in paragraph 188 the Plaintiff responded to the electronic correspondence and wrote:

Good Morning Elena/Staff,

I wanted to follow up with this email and, yes, I do have a few other questions.  Firstly, have your attorney's made a decision on how to proceed?  In addition, has corporate responded to your request to unlock my account?  Also:

-There is leftover glass in the carpet (from the window replacement) which proves to be hazardous.  My last two requests (#1897520 & #1866335, submitted on 7/5/2022 & 8/10/2022) were denied.  The service technician passed along that management denied the service -citing the reason as "we don't do that"- although "Carpet Cleaning/Repair" is literally the first option under the the *Sub Category* tab.  Please advise on a tenable route to request a comprehensive carpet cleaning/shampoo to remove stains and hazardous glass.

-On 7/5/2022 and 8/16/2022, I experienced refrigerator malfunctions severe enough to cause food spoilage.  The refrigerator was replaced on the last service call (as requested).  However, in the portion labeled *description* I requested to be reimbursed for $200 of food spoilage caused by the outage.  I have yet to receive a response.  Requesting for an immediate decision on this request.

-The narrative in the *description* from request# 189512 (8/10/2022) references the service provided in request# 1866335 (7/5/2022).  Please reference these requests and provide a professional cleaning service to clean bathtub.

33

Thank You Kindly,

Pierre Anthony
Unit 212

190.   The Defendant's mangers responded to the Plaintiff's electronic correspondence on

Wednesday August 31, 2022 at 1738 PST as such:

Good Afternoon,

Your account had the check posted to it the day I had emailed a response to you below.
Feel free to log into the portal to review, the balance due is from March/April and on.

In effort to answer your questions please see my response in blue below.

-There is leftover glass in the carpet (from the window replacement) which proves to be
hazardous.  My last two requests (#1897520 & #1866335, submitted on 7/5/2022 &
8/10/2022) were denied.  The service technician passed along that management denied
the service -citing the reason as "we don't do that"- although "Carpet Cleaning/Repair" is
literally the first option under the the *Sub Category* tab.  Please advise on a tenable route
to request a comprehensive carpet cleaning/shampoo to remove stains and hazardous
glass. The breaking of the glass was not due to any events or circumstances related to the
building but of resident actions. We were never made aware of glass in the carpet prior to
the glass being replaced. Please help me understand what you are asking for if it is related
to the install of the glass or the breaking of the glass.

-On 7/5/2022 and 8/16/2022, I experienced refrigerator malfunctions severe enough to
cause food spoilage.  The refrigerator was replaced on the last service call (as
requested).  However, in the portion labeled *description* I requested to be reimbursed for
$200 of food spoilage caused by the outage.  I have yet to receive a
response.  Requesting for an immediate decision on this request. Your request is
declined, we have repaired your refrigerator with in a 24 hour period. Any funds
requested can be made through your renters insurance.

-The narrative in the *description* from request# 189512 (8/10/2022) references the service
provided in request# 1866335 (7/5/2022).  Please reference these requests and provide a
professional cleaning service to clean bathtub. If you would like your apartment
professionally cleaned you must hire a third party company, we can not clean your
shower on your behalf.

34

I hope these answered you requestions to the fullest. If you could please let me know details regarding your request for the cleaning of the carpet, I would greatly appreciate it.

Thank you,

**Elena Shattuck** | Sr. Community Manager
**Seventh & G** | 677 Seventh Ave | San Diego, CA 92101
o 619.696.8096 | 7andGmgr@greystar.com
7andG.com | Facebook | Google+

Proudly managed by Greystar®

191.   The Plaintiff alleges that the Defendant constantly forces the usage of written communication to enforce an unceasing reign of domination, manipulation, and control;

192.   In direct objection of the Plaintiff's reasonable accommodation;

193.   And to the cumulative disadvantage of the Plaintiff and his mental, psychological, and emotional resources.

194.   The Plaintiff alleges that the electronic correspondence outlined in paragraph 190 neglects to render an appropriate greeting with elevated focus directed toward the Defendant's choice to forgo addressing the Plaintiff by name.

195.   The Plaintiff alleges that the tactic outlined in paragraph 194 is a subtle strategy by the Defendant devised to further antagonize and dehumanize the Plaintiff.

196.   The Plaintiff alleges that the response that the Defendant's manager rendered in regards to the broken glass in paragraph 190 displays a nonchalant and cavalier attitude toward overall tenant safety and general health.

197.   The Plaintiff alleges that the same response rendered by the Defendant as described in paragraph 196 is a textbook example of gaslighting and electronic bullying as there is no

35

logical way that the Defendant's manager does not understand that broken glass produces hazards after the event (the breakage of glass) has transpired.

198. The Plaintiff alleges that the response rendered by the Defendant's manger as listed in paragraph 190, in reference to the reimbursement of $200 for food spoilage was professionally negligent;

199. Designed to be mentally, psychologically, and emotionally abusive;

200. Provided overwhelming circumstances of vulnerability, inaccessibility, and marginalization;

201. Deprived the Plaintiff of basis human rights;

202. Were instrumental in creating environmental conditions which systematically erodes the Plaintiff's overall quality of life;

203. Caused the Plaintiff to view his own life as worthless or less than the significance of $200;

204. And is the cause of ongoing injury, hurt, and damage which effectively limits and degrades the Plaintiff overall functionality and continuously jades his outlook on life.

205. On October 3, 2022 at 0800 PST the Defendant's electronically filed:

Superior Court of California County of San Diego
10/03/2022 at 8:00:00 AM
Clerk of the Superior Court
By Melissa Valdez, Deputy Clerk
Case Number: 37-2022-00039261-CL-UD-CTL
Judge: 501
Attorney or Party:        Nathalia, Cantarelli SBN #341173
                          Kimball, Tirey & St. John LLP
                          7676 Hazard Center Drive, Suite 900
Telephone number:        (619) 234-1690
Fax NO:                  (619) 237-0457
Attorney For:            Plaintiff
Superior Court of California, County of San Diego

Street Address:         330 West Broadway
City and Zip Code:      San Diego, Ca 92101
Branch Name:            Central Division
Case Name:              Lofts 677 Holdco, V. Anthony
Civil Case Cover Sheet:   Limited (Amount demanded is $25,000 or less)
1.   Check one box below for the case type that best describes this case:   Unlawful
     Detainer; Residential (32)
2.   This case is not complex under rule 3.400 of the California Rules of Court.   If the
     case is complex, mark the factors requiring exceptional judicial management.
3.   Remedies sought: monetary & nonmonetary, declaratory or injunctive relief
4.   Number of causes of action: 1.
5.   This case is not a class action suit
6.   If there are any known related cases, file and serve notice of related case.
Date:   07/31/2022
(Type or Print Name) Kimball, Tirey & St. John LLP Cantarelli SBN#341173
Signature of party or attorney for party: /s/ Nathalia Cantarelli

206.   The Plaintiff alleges that the actions depicted in paragraph 205, in tandem with

every other violation stated in previous paragraphs:

207.   Constitute a literal offensive assault on the Plaintiff's physical, emotional,

psychological, and mental well-beings;

208.   Are the expressed confluence of violations that the judicial branch is mandated to

regulate;

209.   Should prompt immediate inquiry and review by the Department of Justice, the

Department of Health and Human Services Office for Civil Rights, and the Federal Bureau of

Investigations;

210.   Display willful corporate collusion and intent between the Defendant's managers

and attorneys;

211.   Reveals conspiracy to commit fraud, between the Defendant's corporate entities, at

the expense of the Plaintiff;

212.   Shows bullying, manipulation, and discrimination, between the Defendant's corporate entities, to the Plaintiff's overwhelming detriment;

213.   Is a result of the Defendant's corporate intent, strategy, and design;

214.   Is not a mistake and required corporate creation, planning, and execution;

215.   Is a systemic production and equally replicated at every property owned, managed, or partnered in by the Defendant;

216.   And is likely to adversely affect persons falling in similar protected categories at each of the Defendant's properties named in paragraph 31.

217.   The Plaintiff alleges that the Defendant's actions outlined in paragraph 205 were psychologically, financially, and mentally overwhelming and did cause temporary catastrophic failure to his psyche for a period longer than five days.

218.   The Plaintiff alleges that every document filed in the Superior Court of California by the Defendant was a weapon;

219.   Broadcasts the Defendant's intent;

220.   And is captured execution of the Defendant's will to injure and harm.

221.   The Plaintiff alleges that he did report to the Superior Court of California on Wednesday October 12, 2022 to file:

222.   An answer to the complaint;

223.   Notice of remote appearance;

224.   Request to Waive Court Fees;

225.   And received the Order on Court Fee Waiver (Granted in Whole).

38

226.   The Plaintiff alleges that his disabilities as listed in paragraphs 9 & 10 limit normal activity within crowded dwellings and that he would never occupy such as space if not forced by the Defendant's actions as listed in paragraph 205.

227.   The Plaintiff alleges that each action stated in paragraphs 221-224 was the site of significant damage as the Plaintiff has standing preexisting bias toward engaging written correspondence or paperwork.

228.   The Plaintiff alleges that he did experience double vision, paranoia, and extreme hypervigilance every time he was physically located within the Courthouse.

229.   The Plaintiff alleges that his standing economic conditions, created by the Defendant, only allowed him to file Pro Se which created the imperative to file at the courthouse in person despite the impending adversity.

230.   On Monday October 24, 2022 at the Superior Court of California, the Defendant filed an Application for Order to Serve Summons by Posting and Mailing (Order signed on 11-03-2022).

231.   The Plaintiff alleges that the Defendant's actions listed in paragraph 230 did result in service on the Plaintiff and;

232.   Each summons produced catastrophic events as listed in paragraph 217;

233.   And operates under the same pretenses as described in paragraph 218-220.

234.   On Monday December 19, 2022 at 1613 PST, the Plaintiff received electronic correspondence from Susie Davenport, Consultant III Housing, California Civil Rights Department (Formerly Department of Fair Housing and Employment) containing a Notice of Case Closure, Case Number 202207-17512407, HUD Number 09-23-1567-8, Case Name Anthony/Shattuck et al.

235.   On Friday December 30, 2022 at 1058 PST, the Plaintiff did receive electronic correspondence from Lisa Madrigal, Associate Government Program Analyst, Appeals Unit, Civil Rights Department, Executive Programs Division containing a Confirmation of Appeal to Case Closure, Case Number 202207-17512407, HUD Number 09-23-1567-8, Case Name Anthony/Shattuck et al.

236.   The Plaintiff alleges that he has not received any updates about the appeal since it's submission.

237.   The Plaintiff alleges that each single interaction with the California Department of Civil Rights caused him to relieve as many of the torturous experiences as he dared to remember, each causing significant irreversible damages and pain.

238.   The Plaintiff alleges that the Defendant's Notice to Pay Rent or Quit Letter should be viewed as a weaponized instrument because:

239.   It's employed intent was to harass, manipulate, or control;

240.   The information convey therein was negative and therefore adversely affected the Plaintiff's mental and psychological health;

241.   Is posted written communication and outside the boundaries of the Plaintiff's requested reasonable accommodations;

242.   Was especially violent due to its inherent nature and its continual detriment to the Plaintiff's psychological, mental, and emotional health;

244.   Was increasingly devastating as the amount of rent's associated increased on a monthly basis causing the Plaintiff corresponding levels of injury, agony, and harm.

245.   And sullied the very nature of what it means to make a dwelling a home by imbuing the space with memories of trauma, psychological contamination, and a history of pain.

40

246.   The Plaintiff alleges that every moment in Unit 212 of 7th & G Apartment complex is mentally poisonous as the Defendant has effectively transformed the normal dichotomy of the landlord and tenant to that of an abusive correctional officer and victimized prisoner;

247.   And the Plaintiff's dwelling is effectively his prison cell and the source of constant depression.

248.   The Plaintiff alleges that the Defendant's corporation continued to willfully press the violent attack on Thursday March 16, 2023 by filing:

249.   Request/Counter-Request to Set Case For Trial-Unlawful Detainer UD-150;

250.   Request for Dismissal CIV-110;

251.   Proof of Service by First Class Mail – Civil POS-030;

252.   And a Request For Entry of Default CIV-100.

253.   The Plaintiff alleges that the actions taken by the Defendant in paragraphs 249-252 represent a thoughtful and varied strategy aimed to victimize;

254.   To push the Plaintiff to homelessness by way of eviction;

255.   To saddle the Plaintiff with over $42,000 of fraudulent debt;

256.   To mortally wound the Plaintiff's ability to reconcile with children;

257.   And displays corporate criminal intent.

258.   On Monday April 3, 2023 the Plaintiff and Defendant appeared before the Honorable Judge Bell Superior Court of California, County of San Diego at 1100 Union Street San Diego, Ca 92101 for a Unlawful Detainer Trial at 1400 PST in Department 501.

259.   The Plaintiff alleges that the event described in paragraph 258 are of ultimate significance and is the defined mechanism of harm in the Plaintiff unlawful eviction.

260.    The Plaintiff alleges that the experience was staggeringly brutal and that his anxiety, breathing, and heart rate had painful physical effect.

261.    The Plaintiff alleges that the trauma induced from the experience described in paragraph 258 is lifelong and cannot be remedied without lifelong therapy.

262.    The Plaintiff alleges that, in regards to paragraph 258, the Defendant requested - and was granted- a continuance because they could not produce a material witness.

263.    The Plaintiff alleges that, in regards to paragraph 258, the Defendant stated that the material witness, manager Elena Shattuck, could not be present due to scheduled maternity leave.

## III. Relief Requested

**The Plaintiff affirms that the sheer number, range, and scope of illegal acts; magnitude of detriment willfully distributed; and the completeness with which the Defendant has depraved the Plaintiff is surely to become a case study.   Today is the 457th day of the Plaintiff's continued mental oppression, psychological subjugation, and physical relegation to a domain that the Defendant transformed into a prison cell and was once the Plaintiff's home.   The Defendant performed a masterclass on how to violate federal rules and guidelines; marginalize, humiliate, and discriminate against persons of protected status; and how to outright lie, cheat, and steal on a corporate level.   Four hundred and fifty-seven days does translate to well over 10,000 hrs.   The Plaintiff is now an expert at being abused, violated, harmed, and hurt and it's time for relief.**

**The Defendant has demonstrated, unceasingly and to great effect, it's contempt for persons in protected categories and the lengths they are willing to travel to dominate.   They have literally neglected, or does not abide, by the vast majority of federal policies and rules as it pertains to ADA and reasonable accommodation.   To be clear Greystar Real Estate Partners, its structures, or employees do not possess the infrastructure (real or electronic), training, or equipment to even be compliant with federal laws and regulations.   And this is true for each property; it's common knowledge that the same management and systems are employed within multiple properties.**

**The Plaintiff affirms that he is still suffering violent attack.   Even at this moment the Defendant and Plaintiff are scheduled for trial on June 21, 2023.   The Plaintiff prays for quick relief as his mental, emotional, and psychological capacities are vastly depleted and can barely maintain the continuance of their natural functions.**

264.    The Plaintiff is entitled to relief under the Americans with Disabilities Act of 1990, Title III Public Accommodations;

265.   Health Insurance Portability and Accountability Act of 1996;

266.   The Privacy Rule (45 CFR Part 160, Subparts C, D, & E);

267.   Health Insurance Portability and Accountability Security Rule;

268.   18 U.S.C. § 242 Deprivation of Rights Under Color of the Law;

269.   18 U.S.C. § 245 Federally Protected Activities;

270.   18 U.S.C. § 249 Hate Crime Acts;

271.   18 U.S.C. § 241 Conspiracy Against Rights;

272.   And 42 U.S.C § 3631 Violations; penalties.

273.   The Plaintiff requests that the courts consider the doctrine of *res ispa loquitur* because the Defendant was negligent injuring the Plaintiff and;

274.   The accident was of a kind that does not ordinarily occur in the absence of negligence.

275. The Plaintiff requests that the court orders an immediate preliminary injunction for the Defendant to pay the Plaintiff $150,000 for the initial month (retroactive to May 1, 2023);

276.   and $75,000 per subsequent month;

277.   until the case has been fully adjudicated because there is a high likelihood of irreparable harm and the Defendant is not enjoined from engaging in a certain product.

278.   The Plaintiff requests the monies listed in paragraphs 275 and 275 in order to:

279.   Immediately move to a new location with adequate space for the Plaintiff, his four children, his caregiver, and a nanny or au pair when in receipt of the children;

280.   Replace the necessary furniture, tools, and equipment because the Plaintiff lost both storage facilities -20 years of military/personal/familial history, memories, and overall achievements- while mentally injured and depressed during this timeframe;

43

281.   Hire a private investigator and lawyer in order to find Clifton, Caiden, and Collin - my three sons whom I have not seen or heard from in two years due to parental kidnapping by their mother Valerie Talisha Anthony- and restore the life that I so desperately miss and that has been absolutely wrecked as a consequence of the Defendants action;

282.   Purchase or lease a vehicle safe and spacious enough to adequately transport the Plaintiff's entire family plus a caregiver and/or nanny.   The Plaintiff's current vehicle has suffered a tremendous state of disrepair and is invalid as a consequence of the Defendant actions;

283.   Hire or retain private specialized family therapists to address the abuse sustained as a consequence of the Defendants actions;

284.   Hire or retain a private personal therapist to address emotional and psychological abuse sustained as a consequence of the Defendant's actions;

285.   Hire or retain a private personal psychologist to address traumatic, stress, and anxiety disorders which have been badgered without relief as a result of the Defendant's violations;

286.   Address extenuating financial delinquencies created as a result of the Defendant's actions;

287.   Allow for a comprehensive family vacation which will support healing and recovery;

288.   Allow for extensive travel for the Plaintiff and his caregiver in the pursuit of finding his children;

289.   Allow for meals, incidentals, and per diem for the Plaintiff and his caregiver while traveling;

290.    Allow for meals, incidentals, and per diem for the Plaintiff's children while traveling;

291.    Allow for recreational pursuits for the Plaintiff as expression is a known combatant of depression;

292.    Allow for private hypobaric treatment therapy, a known wholistic program, for the Plaintiff to reduce the effects of post traumatic stress disorder;

292.    Allow for private cryogenic treatment therapy, a known wholistic program, for the Plaintiff to reduce the effects of post-traumatic stress disorder and traumatic brain injury;

293.    Allow for the purchase of a new wardrobe, a know wholistic program, for the Plaintiff to reduce the effects of post-traumatic stress disorder and traumatic brain injury;

294.    And any such and further relief that the court deems is just and proper.

295.    The Plaintiff requests that court orders a structural injunction for the Defendant to pay for or create a $25,000,000 compliance package to address training, manning, and equipment as it pertains specifically to ADA and HIPAA to be negotiated by the Plaintiff and Defendant.

296.    The Plaintiff requests that the court order the Defendant to pay $75,000,000 in punitive damages for the Plaintiff's irreconcilable pain, suffering, and psychological abuse as outlined by in this document.

297.    The Plaintiff requests that the court initiate investigations via the appropriate corresponding federal authorities mandated to enforce broken or violated federal law, policies, and procedures.

298.    The Plaintiff requests that The Court retain jurisdiction over this action until the Defendant has fully complied with the Orders of this Court and that the Court require the Defendant to file such reports as may be necessary to supervise such compliance.

## IV. DEMAND FOR JURY TRIAL

YES.

I declare under the penalty of perjury that the foregoing is true and correct.

Respectfully Submitted,

Date: May 24, 2023

Pierre Anthony
Plaintiff, pro se